The POCANTICO WATER WORKS COMPANY, Respondent, *v.* SETH BIRD et al., Appellants.

The legislature may vest a private person or corporation with the right of eminent domain, when the use to be made thereof is to acquire property for the public benefit.

In order to make the use public, a duty must devolve upon the person or corporation to furnish the public with the use intended. This use may be limited to the inhabitants of a small or restricted locality, but it must be to those inhabitants in common, and not for a particular individual.

The question of public use is a judicial one, and must be determined by the courts.

Plaintiff, a water works company, organized under the act providing for the incorporation of such companies (Chap. 737, Laws of 1873, as amended by Chap. 415, Laws of 1876), located and constructed a dam and reservoir upon the P. river, and in May, 1886, filed a map showing the location and the lands necessary to be taken, and entered into contracts with several villages to supply them with water. It had, prior to May, 1888, acquired the lands occupied by it, and the right to divert the water of the stream from the riparian owners below the dam, except one H., and had commenced proceedings to acquire his rights. On April 9, 1888, the company adopted a map and plans for two additional reservoirs, which were not contemplated at the time of filing the original map, one to be located on lands acquired by it below the land of H., which map was filed May 7, 1888. It had also acquired the rights from the riparian owners below H. to divert the water at such lower reservoir. Before this, however, but while plaintiff was prosecuting with diligence and in good faith the proceedings to acquire the rights of H., defendants, who composed the board of water commissioners of the village of T., with actual notice of what plaintiff had done, undertook to locate a dam and reservoir upon the lands of H., filed a map thereof and

instituted proceedings to condemn for their use the riparian rights of H. In an action to restrain defendants from constructing such dam and reservoir, *held*, that neither plaintiff's original plan, as shown by the map then filed, nor the rights acquired from the riparian owners below, deprived defendants of the right to locate their works upon the same stream below defendants' works; that the fact that defendants succeeded in filing their map before the plaintiff filed its second map, did not necessarily give defendants the exclusive right to condemn and acquire the lower riparian rights; that plaintiff, before filing that map, had the right to enter upon and acquire the lands and water rights required for the additional reservoir, and that the rights so acquired were not impaired by the filing of defendants' map; nor did that act give to them the right to acquire by condemnation proceedings plaintiff's rights in the stream below; and as their proposed dam and reservoir would interfere with those rights, plaintiff was entitled to the relief sought.

Plaintiff, in its contracts with the riparian owners, contracted to supply them with water. It was claimed on the part of defendants that the rights so acquired were not for, and had not been devoted to, the public use, and were not necessary for the purposes of plaintiff's incorporation. *Held*, untenable; that the agreement to supply individuals with water did not destroy the public use, and that the facts justified a finding that said rights were necessary for the purposes of plaintiff's incorporation; that is, to meet the requirements, under all contingencies, of the villages dependent upon it for their water supply.

The judgment below restrained defendants from constructing and maintaining any reservoir and dam upon the P. river, or from intercepting or diverting any of its waters, or from acquiring any riparian rights therein. *Held*, error, and judgment modified so as only to restrain defendants from erecting any reservoir or dam above the point where plaintiff had located its new reservoir.

(Argued October 27, 1891; decided December 1, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 25, 1889, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The judgment below "enjoined and restrained from constructing, erecting or maintaining any dam or dams, reservoir or reservoirs, upon the Pocantico river, a stream in the town of Ossining and Mount Pleasant, county of Westchester, or any of its tributaries for any of the defendants' purposes; and from intercepting, diverting, appropriating or using any of the

waters of said river or its tributaries for the supplying of any village, or its inhabitants, with water therefrom; and from proceeding further to condemn any of the riparian rights in said river, or its tributaries, and from in any wise acting in relation thereto, or interfering with the plaintiff, the Pocantico Water Works Company, in the possession or use of said stream and its tributaries; and it is further ordered, adjudged and decreed that the board of water commissioners of the village of Tarrytown, N. Y., its servants, or agents, or any of them, be and they hereby are perpetually enjoined and restrained from doing any or all of the acts or things hereinabove set forth."

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry C. Griffin* for appellants. The property in question is not required by plaintiff for a public use. (*In re N. F. & W. R. R. Co.*, 108 N. Y. 75; *In re S. R. C. R. Co.*, 128 id. 408; *In re R. W. Co.*, 66 id. 413, 418; *Embury* v. *Conner*, 3 id. 511, 516; *Taylor* v. *Porter*, 4 Hill, 140; *Jenkins* v. *Anderson*, 103 Mass. 94; *Curtiss* v. *Whipple*, 23 Wis. 350; *In re Belfast Academy*, 11 Me. 109; Cooley on Const. Lim. 469; Laws of 1885, chap. 422; Lewis on Em. Domain, §§ 164, 165; *Varner* v. *Masten*, 21 W. Va. 534; *In re N. Y., L. & W. R. R. Co.*, 99 N. Y. 12; *People ex rel.* v. *Forrest*, 97 id. 100; Laws of 1873, chap. 737, § 3; *Garwood* v. *N. Y. C. & H. R. R. R. Co.*, 83 N. Y. 400, 406, 407; *Colrick* v. *Swinburne*, 105 id. 503, 506, 507; *In re Albany Street*, 11 Wend. 150, 151; *In re Cherry Street*, 19 id. 667; *In re S. B. R. R. Co.*, 119 N. Y. 141; *R. & S. R. R. Co.* v. *Davis*, 43 id. 137.) The plaintiff has not complied with the statute in order to acquire the title it claims as a public corporation to riparian rights below its dam. (*Garwood* v. *N. Y. C. & H. R. R. R. Co.*, 83 N. Y. 400; Laws of 1885, chap. 423, § 4; *Marshall* v. *Peters*, 12 How. Pr. 118; 2 Washb. on Real Prop. [3d ed.] 320, 321, 328, 329, §§ 40, 42; *Elliott* v. *F. R. R. Co.*, 10 Cush. 193; *Stokoe* v. *Singer*, 8 El. & Bl. 36; *Wads-*

*worth* v. *Tillotson*, 15 Conn. 366; *Tyler* v. *Wilkinson*, 4 Mass. 397; *People ex rel.* v. *Diver*, 19 Hun, 264; *Dodge* v. *Berry*, 26 id. 246, 248.) Plaintiff cannot succeed in this action, unless it shows the exclusive right on the 21st day of April, 1888, to condemn the property defendants are seeking to acquire. (*In re P. B. Co.*, 108 N. Y. 483, 490, 491; *In re R. E. Co.*, 33 N. Y. S. R. 695, 701; *In re A. W. Comrs.*, 96 N. Y. 351, 358; *People* v. *B. F. & C. I. R. R. Co.*, 98 id. 75.) The plaintiff, having filed a map as the statute requires, exhausted its power of choice, and the location so made was final. (*In re P. Bridge Co.*, 108 N. Y. 483; *H. & D. C. Co.* v. *N. Y. E. R. R. Co.*, 9 Paige, 323.) Assuming that the word "land" as used in section 2, chapter 415, Laws of 1876, does not include water rights, or riparian rights or the right to divert streams, it does not help plaintiff. (*In re Poughkeepsie Bridge*, 108 N. Y. 483.) This action will not lie because the same questions can be litigated at law in the proceeding instituted by defendants to condemn, where plaintiff is a party. (*In re R. W. Co.*, 66 N. Y. 418; *In re C. R. R.* v. *Gas Co.*, 63 id. 326; *In re N. Y., L. & W. R. R. Co.*, 99 id. 12; Story's Eq. Juris. § 875; 1 Johns. Ch. 611; *R. H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 44 Hun, 211; 110 N. Y. 134.) The village of Tarrytown is a necessary party; in fact the only party interested in this litigation. (*People ex rel.* v. *Dwyer*, 27 Hun, 548; *Appleton* v. *Water Comrs.*, 2 Hill, 433; *Grover* v. *Swain*, 29 Hun, 454; *Davis* v. *Mayor, etc.*, 1 Duer. 451; *Mayor, etc.*, v. *Starin*, 106 N. Y. 1.) By statute the defendants can condemn and take any of the property rights or interests owned or held by the plaintiff. (Laws of 1875, chap. 181, § 22; Laws of 1876, chap. 415, § 5; *S. A. R. R. Co.* v. *Kerr*, 72 N. Y. 330.)

*E. T. Lovatt* for respondent. Plaintiff has duly filed its maps, as required by law, to acquire the riparian rights on the Pocantico river. (Laws of 1873, chap. 737, § 3; Laws of 1876, chap. 415.) The plaintiff is the owner of all the riparian rights in said stream, by purchase prior to April

21, 1888. (*Jackson* v. *Fish*, 10 Johns. 455; *Jackson* v. *Blodgett*, 16 id. 172; *Jewett* v. *Jewett*, 16 Barb. 150; *Lynch* v. *Livingston*, 6 N. Y. 422; *King* v. *Mayor*, etc., 102 N. Y. 171.) Plaintiff has used due diligence and acted in good faith in endeavoring to purchase, settle for and acquire all riparian claims on said streams, and particularly with the said George Hart. (*R. H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 44 Hun, 209; 110 N. Y. 128.) Plaintiff has a prior lien upon the Pocantico river and its tributaries, and the right to perfect its title thereto, and the same are necessary for the purposes of the plaintiff. (110 N. Y. 361.) Defendants have no right to locate its dam and water system where they propose to locate the same for the purpose of diverting the Pocantico river, and the two streams which flow into the Pocantico river. (46 Hun, 525; 66 N. Y. 418; *R. H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 110 id. 128; *P. P. & C. I. R. R. Co.* v. *Williamson*, 91 id. 552.) In an action in equity for preventive remedy, such relief only will be granted as the nature of the case and the facts as they exist at the close of the litigation demand. (*Peck* v. *Goodberlette*, 28 Wkly. Dig. 553; 22 id. 536.) In equity actions the court will always look at the entire case, and see whether substantial justice has been done; and where that appears, it will affirm the judgment, notwithstanding the admission of testimony which in ordinary actions at law might have necessitated a new trial. (*Platt* v. *Platt*, 2 T. & C. 26; *Church* v. *Kidd*, 3 Hun, 254; 15 Abb. [N. C.] 107.) This action was properly brought against these defendants, as they are the persons authorized by statute to do any and all acts relative to supplying a village with water. (Laws of 1875, chap. 181; Laws of 1885, chap. 170, 211; *B. R. R. Co.* v. *Firey*, 4 Abb. [N. S.] 365.)

Haight, J. This action was brought to restrain the defendants, who were acting as the board of water commissioners of Tarrytown, from locating and constructing a dam and reservoir upon the premises of one George Hart on the Pocantico river,.

at a point between the plaintiff's dam and its contemplated storage reservoir.

The plaintiff was organized under chapter 737 of the Laws of 1873, as subsequently amended, and had entered into contracts with the villages of North Tarrytown, Dobbs Ferry and Hastings to supply them with pure and wholesome water. It had located its works upon the Pocantico river, and had contructed a dam and reservoir a short distance above the premises owned by Hart, on which the defendants sought to locate their works. It had acquired by contract, purchase or proceedings to condemn, the lands occupied by it, and the right to divert the water, from most of the riparian owners below the dam, and as the court finds, was proceeding with due diligence and in good faith to acquire the riparian rights of Hart; that the defendants, with actual notice of all that the plaintiff had done to secure Hart's rights in the stream, undertook to locate a dam and reservoir on Hart's land, by which they proposed to take the waters of two of the tributaries of the Pocantico river to supply the village of Tarrytown with water, and on April 21, 1888, filed a map thereof and instituted proceedings to condemn for their use the riparian rights of Hart.

It further appears that on the 29th of May, 1886, the plaintiff caused to be filed in the office of the clerk of the county a map showing the location of the dam and reservoir which have been constructed, and of the lands necessary to be taken therefor; that on April 9, 1888, at a meeting of the company, it was resolved that the maps prepared by the engineer of the company showing the location of lands required for the high service reservoir with the rights of way thereto to be erected by the company on the Baylies property and also the storage reservoir located below the present one to be erected on Phelps and Rice property, be adopted, and the president and secretary directed to sign the same and attach the corporate seal of the company thereto according to law, and cause the same to be filed in the county clerk's office. The map so adopted and approved was filed in the office of the

clerk on the 7th day of May, 1888, but not until after the defendant had filed its map.

It is quite apparent that it was not within the contemplation of the plaintiff at the time of the filing of its original map in 1886, to construct the high service reservoir or the storage reservoir. The dam and reservoir as it now exists, with the property necessary to be taken therefor, with the necessary pipe lines therefrom, is all that was covered by that map. It is true that the lower riparian owners upon the stream were entitled to damages by reason of the diversion of the water of the stream at the plaintiff's dam and reservoir. It was the duty of the plaintiff to settle with such owners for the damage so occasioned them, but we do not understand that this would deprive the defendant or any other company of the right to locate its works upon the same stream below the plaintiff's works. The plaintiff by its dam and reservoir only could divert the water of the stream at that place. All of the overflow or surplus, together with that which entered from tributaries below the dam, would continue on down the natural bed of the stream and this surplus was available for the use of other companies. But it is claimed on behalf of the plaintiff that it had found it necessary to also appropriate this surplus as well as that coming to the river from the tributaries below the dam, and that this appropriation was finally determined upon at the meeting of the company on April ninth; that in order to carry out the enterprise, it had acquired the lands necessary for the new storage reservoir with the right to divert the water of the river thereat instead of the dam above, and that all of the rights of the riparian owners between the company's dam and its proposed storage reservoir had been acquired, with the exception of that belonging to Hart, and that it was proceeding with due diligence to acquire his interests when the defendants, with full knowledge of the plaintiff's purposes and plans, filed their map and instituted their proceedings to condemn.

It is under these circumstances that the plaintiff seeks to enjoin the defendant.

As to the river below the plaintiff's dam, the defendants succeeded in filing its map before the plaintiff, but we do not regard this act as necessarily giving the defendants exclusive right to condemn and acquire the lower riparian rights in the river.

We are aware that in the case of *Rochester, Hornellsville & Lackawanna Railroad Company* v. *New York, Lake Erie & Western Railroad Company* (110 N. Y. 128), it was held that where a railroad corporation has made and filed a map and survey of the line of route it intends to adopt for the construction of its road, and has given the required notice to all persons affected by such construction, and no change of route is made as the result of any proceeding by any land owner or occupant, it has thereby acquired a right to construct and operate its road upon such line, exclusive in that respect as to all other roads or corporations.

But in the case of a railroad, the statute provides for the location of its route through the counties which it has to pass, and such location is made known by the map and survey which it places on file. The statute then, within a specified time, gives to the persons interested the right to institute proceedings to change the location. If this is not done, the road becomes located at the place indicated upon the map filed, and the company is thus given the exclusive right to construct and operate its road upon such line. But no such provision is embraced in the statute giving to water works companies the right to locate their dam or reservoir.

The provisions of that act, as amended by chapter 415 of the Laws of 1876, provides that after the company shall have fully completed its organization, and shall have made a contract with any town or village, as provided in the act, to supply the same with pure and wholesome water, the company and its agents and employes shall be authorized to enter upon any land or water for the purpose of making surveys and to agree with the owner of the property which may be required for the purposes of the act, as to the amount of compensation to be paid such owner; but before entering, taking or using any

land for such purposes, the company shall cause a survey and map to be made of the lands intended to be taken or entered upon, on which the land of each owner or occupant shall be designated, which map shall be signed by the president of the company and its secretary, and filed in the office of the county clerk.

It will be observed that under the provisions of this statute the map is to be filed before the company enters upon the land for the purpose of using it. But it may enter upon the lands for the purpose of making surveys and acquiring title by agreement with the owner before such map is filed; and that is what it appears had been done by the plaintiff in this case.

Phelps granted unto the plaintiff " the full right and privilege to forever divert the waters of the Pocantico river from my premises, situate, lying and being in the town of Mt. Pleasant, county of Westchester and state of New York, and use the same for all its purposes."

Beatty granted unto the plaintiff, " its successors or assigns, the full right and privilege to forever divert the waters of the Pocantico river from my premises in said town, county and state, and use the same for all its purposes."

Harriet Horton granted " all my riparian rights in and to said Pocantico river, and hereby sell and assign the same riparian rights to said Pocantico Water Works Company, for myself, heirs, executors, administrators and assigns."

Carle granted to the plaintiff, " its successors or assigns, the full right and privilege to forever divert the waters of Pocantico river from my premises, situate, lying and being in the town of Mt. Pleasant, county of Westchester and state of New York, and use the same for all its purposes."

Rockefeeler granted unto the plaintiff " all my right, title and interest, and claim of, in and to the water of the Pocantico river, and release all damages for the diversion thereof on or along my premises by said company for the purposes for which it was chartered."

Rice conveyed lands to the plaintiff which embraced the bed of the stream and carried with it the riparian rights of the grantor.

Other lands were acquired by purchase and proceedings to condemn which we do not deem it necessary to mention in detail.

We have called attention to the lands lying between the company's dam and its proposed storage reservoir, all of which had been acquired by the plaintiff, with the exception of Hart's, prior to the time that the defendants filed their map, and in each grant the right was given to the plaintiff to divert the water running in the stream at the premises. This would include all of the overflow from the company's dam as well as all of the water which should enter the stream from the tributaries below the dam and above the premises so acquired.

Hart's property is located upon the river above the premises mentioned as having been acquired by the plaintiff. If the defendants are permitted to locate their dam and reservoir upon the Hart property it will cut off the water which otherwise would naturally flow through the river. They would consequently have to acquire from the plaintiff its rights to the water flowing through the premises mentioned. This they claim the right to do by proceedings to condemn, and for that purpose their map was filed.

In view of the fact that the statute gave to the plaintiff the right to acquire land and water rights by agreement with the owners before filing its map, we do not think that its rights acquired by such agreement were impaired by reason of the filing of defendants' map.

It is claimed, however, that these rights acquired by the plaintiff were not for the public use, had not been so devoted, and that they were not necessary for the purposes of its incorporation.

The term "public use," as used in connection with the right of eminent domain, is not easily defined. The legislature has no power to take the property of one individual and pass it over to another, unless the use to which it is to be applied is for the public benefit. The question of public use is a judicial one and must be determined by the courts. It is not affected by the agency employed, for it may be vested in private per-

sons, who may be actuated solely by motives of private gain, if the use to be made thereof is for the benefit of the public. It has consequently been held that railroads, canals, turnpikes, ferries, sewers, gas and water companies are for a public use, and the legislature may give them the right to take the real estate necessary for their use under the right of eminent domain. It is doubtless true that in order to make the use public a duty must devolve upon the persons or corporation holding the property to furnish the public with the use intended. The term implies "the use of many," or "by the public," but it may be limited to the inhabitants of a small or restricted locality, but the use must be in common and not for a particular individual. (Lewis on Eminent Domain, chapter 7; *Olmstead* v. *Proprietors of the Morris Aqueduct*, 46 N. J. Law, 495; *Inhabitants of Wayland* v. *County Commissioners of Middlesex*, 4 Gray, 500; *St. Helena Water Company* v. *Forbes*, 62 California, 182; *In the Matter of the Application of the New Rochelle Water Company*, 46 Hun, 525; *Stamford Water Company* v. *Stanley*, 39 id. 424.)

The statute under which the plaintiff was incorporated gives the right of eminent domain after the completion of the organization of the company and its contract with the town or village to supply the inhabitants thereof with pure and wholesome water. The contract does not of itself make the use public, but it does impose upon the plaintiff a duty to supply the villages with whom the contract was made with water. It being with villages in which the inhabitants thereof have the right to its common use, it becomes public within the rule uniformly recognized by the courts.

But it is said that the plaintiff has entered into contracts with Rockefeller, Horton, Legate and others, persons of whom the plaintiff has secured its water rights, to supply them, their cattle, etc., with necessary water. Very true. It also may engage with every householder in the village of North Tarrytown to supply them with water. This would not destroy the public use. It would rather tend to show use by many, and thus establish that the use was for the public benefit. With

the persons named there are special contracts, but those contracts were made for the purpose of securing their riparian rights.

It is true that the rights of the plaintiff, acquired below its dam, have not as yet been devoted to a public use, but at the time this action was commenced it had not had time to complete the structures necessary therefor; that it was proceeding in good faith and with due diligence, was a fact found by the trial court.

The property must be necessary for the purposes of the incorporation. This fact has also been found by the trial court, and when we take into consideration that the inhabitants of three villages are dependent upon the supply which the plaintiff is able to furnish, our changeable seasons and the liability to long droughts, we are not disposed to interfere with such finding, but rather to adopt the language in the case of *Olmsted* v. *Proprietors of the Morris Aqueduct* (47 N. J. Law, 311): "It is impossible to estimate with precision the quantity of water that will be needed to supply the wants of the population of * * *. Nor can it be computed with accuracy what the supply of water will be from the district hitherto relied upon. In a matter of such extreme necessity, all contingencies must be provided for, and the supply should be so ample that a lack of water could not be reasonably apprehended. A supply to that extent is necessary to enable the company to perform its duty to its consumers."

We do not deem discussion necessary as to the other questions raised.

The judgment should be modified so as to only enjoin the defendants from constructing, erecting or maintaining any dam or reservoir upon the Pocantico river above the point where the plaintiff has located its storage reservoir, and as so modified the judgment should be affirmed, with costs.

All concur.

Judgment accordingly.