In the Matter of the Petition of JAMES W. BURNS for the Appointment of Commissioners to Assess Damages to Riparian Owners on Roaring Brook. INGHAM D. TOWNSEND and Others, Appellants ; JAMES W. BURNS, Respondent.

*Constitutional law — an act declaring Roaring brook a public highway is in violation of section 18 of article 3 of the Constitution of New York.*

Chapter 338 of the Laws of 1896, entitled "An act declaring Roaring brook, in the town of Martinsburgh, in the county of Lewis, a public highway, and pro viding means for the assessment of damages to riparian owners thereof," is a local act, and falls within the prohibition of section 18 of article 3 of the Con- stitution of the State of New York, which forbids the Legislature from passing any private or local act laying out highways.

APPEAL by Ingham D. Townsend and others from an order of the Supreme Court, made at the Jefferson Special Term and entered in the office of the clerk of the county of Lewis on the 15th day of December, 1896, appointing three commissioners to assess damages to riparian owners on Roaring brook in the town of Martinsburgh, Lewis county, under chapter 338 of the Laws of 1896. A petition was presented by James W. Burns, verified on the 7th day of November, 1896, which states that the appellants and others named are " the only riparian owners on said stream." The petition further states, viz. : " That Roaring brook in the town of Martinsburgh, Lewis county, was declared a public highway for

the purpose of floating logs, timber and lumber down said stream, by an act of the Legislature passed April 21st, 1896, being chapter 338 of the Laws of 1896." The petition further states, viz.: "That your petitioner is desirous of having the damages to riparian owners assessed as provided by said act, and for that purpose that commissioners should be appointed by this court."

The affidavit of Elmer E. Peebles in answer to the petition, stated, viz.: "That he is the owner of land on both sides of Roaring brook, not far from two miles from Black river, for the space of about 100 rods on said brook, and is also the owner of land on both sides of said brook for about one mile distance from its mouth, at Black river. Deponent further says that all of said land owned by him is low land, and is liable to be flooded with water during the spring and fall freshets on said stream, and when, for any other reason, the water is high in said brook. Deponent further says, that he is well acquainted with the said stream and in his judgment lumber and timber cannot be driven from the tract of land owned by petitioner above named, James W. Burns, without creating an artificial supply of water near the source of said stream and driving the timber through the same to Black river by the means known as flooding the stream. Deponent further says, that in his judgment it will be necessary to continue such flooding beyond the spring freshets on said stream, in which case the land owned by deponent will be seriously damaged, owing to the liability to have the same flooded and covered with water by the usual means of driving logs and timber on streams of the same character. * * * That deponent's mother, Pamelia Peebles, owns and has a life estate in lands on both sides of said creek for the distance of about one-half mile, which lands will be subjected to the same damage as the lands of deponent, in case said stream is used as a public highway for the purpose of driving logs and timber thereon; that the residuary owners of a portion of said lands are not mentioned in the petition herein and have not been notified of the above-entitled proceeding."

The affidavit of Townsend states, viz.: "That he is the owner of low lands on both sides of Roaring brook, for the space of about 60 rods, at a distance of something over one mile from the point where said stream empties into Black river."

The affidavit of Venendo Peebles states, viz.: "Deponent further

says that he has a residuary interest in a portion of the lands now in possession of his mother, Pamelia Peebles, through which said stream passes, and deponent has not been served with any notice of the application in this matter, and the residuary owners of said land in possession of Pamelia Peebles, except Elmer E. Peebles, have not been served with notice of the motion herein, for the appointment of commissioners, and deponent has not, in any manner, consented to the appropriation of his lands for the purposes sought, and has not waived notice of this proceeding."

In the order appointing the commissioners it is recited that due proof of service of the petition had been made and that the appellants filed affidavits from which the quotations have already been made, and the order stated that the riparian owners objected to the appointment of commissioners "on the ground that the act under which petitioner is proceeding is unconstitutional and void, and that it appears from the papers read that the property of said riparian owners is sought to be condemned for the use of the petitioner and not for any public use allowed by law," and the order then named three commissioners.

*C. S. Mereness*, for the appellants.

*A. E. Kilby*, for the respondent.

HARDIN, P. J.:

Chapter 338 of the Laws of 1896, is entitled, viz.: "An act declaring 'Roaring brook,' in the town of Martinsburgh, in the county of Lewis, a public highway, and providing means for the assessment of damages to riparian owners thereof."

The act contains the following language:

"SECTION 1. Roaring brook, in the town of Martinsburgh, in the county of Lewis, from its junction with Black river to the head waters of said brook, in said town of Martinsburgh, is hereby declared to be and is hereby constituted a public highway for the purpose of floating logs, timber and lumber down said stream.

"§ 2. Any person desiring to use said stream as a public highway may apply to a Special Term of the Supreme Court for the appointment of three commissioners to appraise the damages of the ripa-

rian owners on said stream on eight days' notice, and on service of a copy of the application to. said Supreme Court on said owners, and notice when and where the same will be presented. The said commissioners shall take the constitutional oath of office, examine the premises affected and hear such evidence as may be offered by the persons or corporations in interest, and report their findings to the Supreme Court for confirmation. Upon the confirmation of such report, the person desiring to use said stream for the purposes aforesaid, shall pay or tender to the persons or .corporations to whom damages are awarded, the amounts awarded respectively, and shall also pay the expenses and fees of said commissioners, at the rate of three dollars per day, for the time actually employed.

" § 3. This act shall take effect immediately."

No point is urged in the argument by the appellants that the proper parties were not before the court.

It is contended in behalf of the appellants " that the purpose of the act in question and of this proceeding is to condemn the property of the appellants for the private benefit and accommodation of the petitioner," so that he may " get his timber to market cheaper than by the ordinary means in use." It will be seen by the language of the act that it provides that " any person " who desires to use the stream may apply for the appointment of commissioners, and that when the assessment of damages had been made and paid, the stream may then be used by the public.

It has been adjudged by numerous cases that private property of individuals cannot be taken without their consent, except where the property is required for a public use. (*Embury* v. *Conner*, 3 N. Y. 511; *Matter of Deansville Cemetery Association*, 66 id. 569.)

Whether the use to be made is a public one or not is a judicial question to be determined by the courts. (*Pocantico Water Works Co.* v. *Bird*, 130 N. Y. 249; *Matter of Niagara Falls, etc., R. Co.*, 121 id. 319.) And it was said in *Matter of Townsend* (39 N. Y. 174) that an express declaration in the legislative act that the use was a public one will not control.

It is contended in behalf of the respondents that the act in question provides for condemnation of the property and rights of the appellants for public purposes, and that the intent of the act is to open the stream, after condemnation and compensation paid, as a

public highway, and that thereupon any person may use the stream as a public highway for the purposes mentioned in the act.

In the course of the opinion delivered in *Matter of Townsend* (39 N. Y. 174) it was said that if the use is public, that the power to take and appropriate " may be conferred upon individuals or corporations." And it was further said that the Legislature was under no restraint in the selection of the parties to whom the power to take and apply shall be delegated, and " that as to the instrumentality employed and the manner in which the property shall be taken and be applied to the public use, the Legislature are the sole judges. Their supreme power over the subject is qualified only by the three particulars : the use must be public, compensation must be given, the amount required as compensation must be ascertained by a jury or by not less than three commissioners appointed by a court of record. * * * Where the use for which the property is desired is in its nature public, the Legislature are the supreme and final judges of the question, whether the public necessity or benefit is such as to call for the exercise of the power; whether the time is a fitting one ; what particular property may be taken, and in what manner in respect to the instrumentalities to be employed for the purpose — whether State officers, individuals or corporations. All these are purely matters of discretion, within the exclusive cognizance and jurisdiction of the Legislature."

In the course of the opinion delivered in *Brooklyn Park Commissioners* v. *Armstrong* (45 N. Y. 243) it was said : " The Legislature is the proper body to determine the necessity of the exercise of the power, and the extent to which the exercise of it shall be carried, and there is no restraint upon the power, save that requiring that compensation shall be made. * * * When the Legislature has indicated the existence of what is acknowledged to be a public use ; has declared the necessity of the taking for that use and its extent ; has restricted the taking to the extent declared and has provided for the ascertaining and the due payment of just compensation, the judicial power may not question its decision."

The papers submitted upon the application for the appointment of commissioners show that a large number of persons own land on the banks of the stream, and under the statute it seems that all of them, as well as all others who desire, as well as the petitioner,

would have the right to the use of the stream as a public highway immediately after the compensation shall be paid, which shall be ascertained as just and suitable to the riparian owners.

Is the act, under which the commissioners were appointed in the order appealed from, valid?

Section 18 of article 3 of the Constitution of the State of New York provides as follows: "The Legislature shall not pass a private or local bill in any of the following cases. * * * Laying out, opening, altering, working or discontinuing roads, highways or alleys, or for draining swamps or other low lands."

In section 23 it was provided, viz.: "Sections seventeen and eighteen of this article shall not apply to any bill, or the amendments to any bill, which shall be reported to the Legislature by commissioners who have been appointed pursuant to law to revise the statutes."

In the case in hand there is no proof, or even suggestion, that the act relating to Roaring brook was reported to the Legislature by commissioners appointed pursuant to law to revise the statutes.

The act must be regarded as a local one, and, therefore, falls within the exact language of section 18. (*Treanor* v. *Eichhorn*, 74 Hun, 58.)

Section 18 was adopted as part of the Constitution in 1874, and was incidentally referred to by ALLEN, J., in *People ex rel. Commissioners* v. *Banks* (67 N. Y. 574), when considering chapter 445 of the Laws of 1876, and he uses the following language in respect to the section: "This provision was designed to prevent any interference with the general highway system of the State, or with the keeping of the ordinary highways and public roads in repair under that system, and the supervision of the officers designated, and in the use of the means and the labor provided by law. The act under review does not, in any of its provisions, provide for the altering, opening or working of a highway, in the sense which those terms were used in the statutes of the State, regulating highways and public roads, or the constitutional provisions now invoked."

In *People ex rel. Morrill* v. *Supervisors* (112 N. Y. 588) the language of section 18 of the Constitution was referred to in the course of the opinion delivered by ANDREWS, J., in which he says: "The constitutional amendment in 1874, which, among other cases

specified, prohibits the Legislature from passing any private or local bill 'laying out, opening, altering, working or discontinuing roads or highways.' * * * The effect of the amendment was to take from the Legislature the power it theretofore possessed to pass laws laying out, altering or working highways, operating independently of the local authorities, and by their own force, while at the same time it preserved to the Legislature the power to vest in boards of supervisors, within their respective jurisdictions, the same powers in respect to laying out, opening and working highways, which the Legislature could itself no longer directly exercise. * * * But, as we have seen, the Legislature, while now prohibited from enacting a law laying out, opening or working highways, may, nevertheless, confer the power it before possessed upon boards of supervisors."

In chapter 568 of 1890 the Legislature provided a general system for the laying out, opening and discontinuing of highways, and the act and the amendments thereto are known as " The Highway Law." (See 1 R. S. [9th ed.] 665, *et seq.*)

Streams which have been used for navigation, or for floating logs or other purposes, have, for many years, been known as highways. In the ordinance of 1787 the following language is found: " The navigable waters leading into the Mississippi and St. Lawrence shall be common highways and forever free."

In *Scott* v. *Willson* (3 N. H. 321) it was held that the Connecticut river was a public highway.

In volume 3 of Kent's Commentaries (sub. 3, *432) it is said: " Every thoroughfare which is used by the public, and is, in the language of the English books, ' common to all the king's subjects,' is a highway, whether it be a carriageway, a horseway, a footway, or a navigable river. It is, says Lord HOLT, the *genus* of all public ways. The law with respect to public highways and to fresh water rivers is the same, and the analogy perfect, as concerns the right of soil."

By an act of the Legislature passed in 1813, the Genesee river was declared to be " a public highway from the great falls to the Canasuaga creek." And in discussing the situation of the abutment on the Genesee river on the east side in 1840, the vice-chancellor says: " The Genesee river is declared to be a public highway." (*Mayor* v. *Curtiss*, Clark's Ch. [Ed. of 1869] 345.)

In Burrill's Law Dictionary (Vol. 2, p. 572) the word highway is defined as follows: "A public way or road; a way or passage open to all; a way over which the public at large have a right of passage."

The prohibition in section 18 of article 3 of the Constitution against the passage of a private or local bill "laying out, opening, altering, working or discontinuing roads, highways or alleys" deprived the Legislature of the right to pass an act which, in terms, applied to a single stream known as "Roaring brook." The act is entitled, "An act declaring Roaring brook, in the town of Martinsburgh, in the county of Lewis, a public highway;" and the 1st section of the act contains the following language: "Roaring brook, in the town of Martinsburgh, in the county of Lewis, from its junction with Black river to the head waters of said brook, in said town of Martinsburgh, is hereby declared to be and is hereby constituted a public highway for the purpose of floating logs, timber and lumber down said stream." Thus we find an attempt to do just what the section of the Constitution, to which we have adverted, prohibits. The 2d section provides that: "Any person desiring to use said stream as a *public highway*" may apply to the Special Term for the appointment of commissioners.

The title of the act, the language of the act, the intent and purposes of the act, gathered from the phraseology used therein, indicate very clearly an intent to evade the provisions of section 18 of article 3 of the Constitution.

We think the act in question was beyond the power of the Legislature, being a private or local act, and that the same must be declared invalid.

The order should be reversed, with costs, and proceedings dismissed, with costs.

All concurred, except WARD, J., dissenting.

Order reversed, with costs, and proceedings dismissed, with costs.