(35 Misc. Rep. 426.)

VILLAGE OF FULTONVILLE v. FONDA WATERWORKS CO.

(Supreme Court, Special Term, Montgomery County. July, 1901.)

CONDEMNATION—LAND DEVOTED TO PUBLIC USE—EVIDENCE.

A village, in order to obtain a water system, duly voted to issue bonds for that purpose, and filed maps and plans in the village and the county clerks' offices. The only adequate supply existing was in the lands of an adjacent village, which were embraced in the plans. A water corporation was organized in such other village under Transportation Corporations Law (Laws 1890, c. 566) art. 7, and purchased the lands containing the water supply. The village disagreed with the corporation as to the price of the lands to be condemned. Such corporation had filed no map of the lands as provided by statute, and had entered into no valid contract with the village in which the land was situated for the purpose of supplying it with water. The corporation was organized two months after the first-named village had filed its maps and plans. *Held*, that the land was in no way devoted to public use, and was subject to condemnation.

Condemnation proceeding by the village of Fultonville against the Fonda Waterworks Company. Judgment for plaintiff.

G. M. Albot, A. J. Nellis, and R. B. Fish, for plaintiff.
J. S. Sitterly, B. D. Smith, and H. V. Borst, for defendant.

HOUGHTON, J. In October, 1900, the plaintiff, by special election, voted to appropriate the sum of $50,000 for the establishment of a water system for its inhabitants. A committee of its board of trustees was empowered to employ an engineer to devise plans and superintend the construction. Surveys were made, and the property now sought to be condemned was staked out during the months of October and November. On January 11, 1901, the plans of the engineer and a map embracing the territory in question were adopted by the plaintiff, and were duly filed on that day in the various clerks' offices. On the 16th of January a special election was had, and the plaintiff voted to bond itself for the sum of $50,000 for the purpose of paying for the construction of such waterworks. On the 11th of March, 1901, amended maps and plans were made and filed in the village and county clerks' offices. Both maps included the defendant's property, and it was conceded upon the trial that the plaintiff's engineer staked out the limits of the ground now proposed to be taken before January 14, 1901. On the 14th of January, 1901, the defendant filed articles of incorporation in the secretary of state's office and in the clerk's office of Montgomery county. The purpose of the corporation is stated in

71 N.Y.S.—64

the certificate to be to supply the village of Fonda and the inhabitants thereof with water; and a permit by a majority of the board of trustees was annexed to the articles of incorporation, authorizing the formation of such corporation for said purpose. On the 23d of January the defendant company obtained what it claims to be a contract with the board of trustees of the village of Fonda for the furnishing of water to such village upon certain terms. Both the village of Fultonville and the village of Fonda are conceded to be under the operation of the general village act (Laws 1897, c. 414), and the village of Fonda had a board of water commissioners selected from its board of trustees. On January 14th and February 2d, 4th, and 19th, the defendant purchased the lands, for a part of which condemnation is sought. Effort was made to agree with the defendant as to the price to be paid for the lands proposed to be condemned, but agreement could not be had, and these proceedings were instituted in March following.

The village of Fultonville is situated on the south side, and the village of Fonda on the north side, of the Mohawk river. The former has about 1,000 inhabitants, and a very inadequate supply of water. The latter has about 1,200 inhabitants, and has a general water system, inadequate at dry times; the inhabitants having, however, refused to extend the system by general taxation. The water supply sought to be obtained by these proceedings is the only supply in the immediate vicinity of either village, and is about equally distant from each.

The defendant answered, putting in issue the allegations of the petition, and insists particularly that the plaintiff cannot condemn the lands sought to be taken, because the defendant company has already appropriated them to the public use of supplying the village of Fonda with water.

The plaintiff insists that this contention cannot be maintained, because it began its proceedings to acquire the property long before the purchase of the land by the defendant, and that the incorporation of defendant and its purchase of the property was in bad faith and merely for the purpose of hindering the plaintiff in its acquiring a water system, and further that the defendant has no standing in its claim that it has devoted the property to the public use, because it has no valid and binding contract with the village of Fonda or any other municipality to supply it with water. I think the plaintiff's contention must be upheld. It cannot be seriously contended that the defendant has a valid contract with the village of Fonda to supply it and its inhabitants with water. Aside from the question whether or not the contract should be made with its existing water board instead of the trustees, no notice was given of the meeting at which the resolution entering into the contract was passed. The board of trustees consisted of a president and four members. Two of the members visited the president and told him that there would be a meeting that night, stating no definite time and serving no notice; and the other member of the board was in no way informed of the meeting. It was

a special meeting, and, of course, not duly called. In addition to this, the contract which was attempted to be entered into might call for a sum exceeding 2½ mills on a dollar of the taxable property of the village per annum (Laws 1897, c. 414, § 234), and it bound the company in no way to furnish water unless it saw fit so to do. I think when the legislature passed article 7 of the transportation corporations law (Laws 1890, c. 566), giving the right to individuals to incorporate as water companies, that it must have been its intention that the company should bind itself to give public service by some valid contract which could be enforced, before it acquired the extraordinary privileges of not only condemning land and taking it from unwilling owners, but of acquiring lands which thereafter became devoted to public use, so that no other municipality or corporation could acquire it by condemnation proceedings. Such extraordinary privileges must call for mutual obligation. The whole theory of the law in allowing rights to be held for public use is that it is a public necessity, and because the public is to be benefited. Of course, a water company could acquire lands by purchase as well as by condemnation; but it cannot say, I think, that lands acquired by it by purchase are exempt from condemnation by a municipal or other corporation until it has devoted those lands in some obligatory way to the public use. If it were different, any municipality could be thwarted in its effort to obtain water for its inhabitants, by the formation of a water company, without contract to furnish the municipality; and a company might thus hold the only available supply upon the plea that the lands had been once devoted to public use, and therefore they would neither sell nor allow the municipality to condemn.

The defendant has filed no map, and section 83 of the transportation corporations law provides that, before using any land for the purpose of its incorporation, such corporation shall cause a survey and map to be made and filed in the office of the county clerk of the county. Of course, it has the right to enter upon lands which it proposes to condemn, or which it purchases for the purpose of making the survey, otherwise it could make no map; but this provision is significant as showing that the legislature intended a devotion of the property acquired either by purchase or condemnation to the use of the public. In the present case the defendant's property has been devoted in no way, and it has entered into no contract which compels it so to do. If the defendant's contention is to be upheld, and it sees fit, it can simply withhold from both villages the only available water supply, and refuse to sell, and prevent condemnation. In the case of Waterworks Co. v. Bird, 130 N. Y. 249, 29 N. E. 246, the court says:

"It is doubtless true that, in order to make the use public, a duty must devolve upon the persons or corporation holding the property to furnish the public with the use intended." And again: "The contract [with the municipality] does not of itself make the use public, but it does impose upon the plaintiff a duty to supply the villages with whom the contract was made with water." And again: "It is true that the rights of the plaintiff, acquired

below its dam, have not as yet been devoted to a public use, but sufficient time has not elapsed."

In addition to this, I think the evidence clearly shows that the defendant corporation was organized for the purpose of thwarting the plaintiff in acquiring the particular water supply in question. The village of Fonda is situated less than a mile from the plaintiff. The inhabitants of the village had voted upon the proposition of acquiring these same water rights, and had rejected the plan. Months before the organization of the defendant, a vote had been taken by the plaintiff, and $50,000 had been appropriated for the establishing of a water system; and the plaintiff's engineers had laid out lands proposed to be within the water system, and embraced in those purchased by the defendant at a later period. The gentlemen who organized the defendant corporation may have been actuated by simply patriotic motives, and have believed that their village had made a mistake in not acquiring the same supply of water which the plaintiff was in process of obtaining, and may have organized the defendant company for the purpose of preserving to themselves and their neighbors water which they knew they must eventually need. But the plaintiff was first in the field. It was going regularly about the business of establishing its water system, and the taking of the lands which the defendant subsequently purchased. If equities are to govern, then the equity is with the plaintiff, for the defendant corporation purchased the property knowing what was contemplated in regard to it on behalf of the plaintiff, and it can hardly be said, under the circumstances, that the waterworks company acted in good faith. I think it might be said, under the authority of Village of Champlain v. McCrea, 165 N. Y. 264, 59 N. E. 83, that the beginning of the acquiring of the water privileges by the plaintiff was when it took its vote to expend the sum of $50,000, and employed engineers who staked out the land proposed to be taken, and filed their maps, and that any subsequent proceeding to condemn was but a continuation of the proceedings thus begun. But, in the view which I take, I do not deem it necessary to go to that extent.

I have examined with care the numerous cases cited by counsel upon both sides, and, as I interpret them, none of them are contrary to the conclusions which I have reached, nor are they of such character as require them to be distinguished. The judgment prayed for by the petition is granted, and a decision may be prepared in accordance with the above.

Judgment accordingly.