## HILDRETH v. MONTECITO CREEK WATER COMPANY.*

### L. A. No. 1256; November 6, 1902.

#### 70 Pac. 672.

**Water Company.—A Complaint Seeking to Compel a Water Company to Supply** plaintiff's premises with water, which alleged, in terms, that the water controlled by the defendant had been appropriated to public use, was not so deficient in that regard as to be subject to a general demurrer, though the facts might have been more specifically stated.

**Water Company—Right of Consumer to Demand Water.—The** waters of a certain creek had been diverted by a ditch and distributed among the neighboring inhabitants, including plaintiff's grantor, for more than five years prior to the formation of a company for the principal purpose of supplying water to the stockholders and others entitled thereto, whether as riparian owners or as appropriators. This company, with the acquiescence of all parties, diverted the water into pipes, and for twenty-five years delivered it to those entitled thereto. Held, that by a prescription of thirty years, confirmed by an implied contract, plaintiff was entitled to demand that the company continue to supply him his share of the water on payment of reasonable rates.

**Water Company—Action to Compel Supply.—Constitution,** Article 14, section 1, declares the use of water "appropriated for sale, rental, or distribution" to be a public use. A complaint alleged that the waters of a certain creek had been appropriated by a company to public use. It was proved that the company controlling the water of the creek was formed for the principal purpose of distributing it to those entitled thereto by a prior appropriation to public use or as riparian owners. Held, that there was no variance.

**Water Company—Public Use.—Where Several of Those Entitled** to the waters of a certain creek, as a public use, formed a corporation for the purpose of distributing the water, and all but one of those entitled thereto subsequently became stockholders, the use was not thereby rendered any the less a public one.

**Water Rights.—Where the Rights of a Community** to the water of a certain creek were appurtenant to the lands of the individuals composing the community, each individual land owner had an appropriative right to his share of the water.

**Water Rights.—Where One had an Appropriative Right as a** land owner to his share of the water of a certain creek, and the

---

*For subsequent opinion in bank, see 139 Cal. 22, 72 Pac. 395.

water was afterward taken by a corporation for the purpose of distributing it to those entitled thereto, the land owner could not be restricted, by way of estoppel or contract, in the appropriative right to his share, by by-laws of the corporation of which he had no notice.

**Water Rights—Adverse User.**—Where One had an Appropriative right as a land owner to his share of the water of a certain creek, and the water was afterward taken by a company for the purpose of distributing it to those entitled thereto, and the land owner for eight years was not supplied by the company, after which he regularly received his share from it, he did not lose his right by an adverse user of the company during the intervening period.

APPEAL from Superior Court, Santa Barbara County; W. S. Day, Judge.

Action by Edward Hildreth against the Montecito Creek Water Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

G. H. Gould for appellant; Canfield & Starbuck for respondent.

SMITH, C.—This is an appeal from a judgment adjudging plaintiff entitled to have his premises in the Montecito, in the county of Santa Barbara, known as the "Lorenzana Place," supplied with water from the pipes and waterworks of defendant corporation, as the same were being supplied at the time of the commencement of the suit, at the rate of one dollar per month, or such other reasonable rate as may hereafter be lawfully fixed for such water supply, and that defendant, its officers, etc., provided the rates be paid, be perpetually enjoined from shutting off from said premises the water supply aforesaid. The grounds urged for reversal, in addition to some alleged errors of law that will not require consideration, are that the complaint does not state a cause of action, that the judgment is not supported by the findings, and that certain of the findings are not justified by the evidence.

The objection to the complaint is, in effect, that it is not sufficiently alleged that the waters controlled and managed by the defendant have been appropriated or dedicated to public use. But it is so, in terms, alleged; and, though the facts might have been more specifically stated, the complaint, in the absence of special demurrer, is, we think, sufficient.

The objections to the findings are that there is a fatal variance between the case as found and as alleged, and that the findings are otherwise insufficient to support the judgment. The case, as affected by these objections, is as follows: For more than five years prior to the year 1877, the waters of Hot Springs creek, to the extent of its entire summer flow, had, by means of a ditch, been diverted from their natural channel and distributed generally among the inhabitants of the Montecito, in the neighborhood of the creek, including plaintiff's predecessors in title, and by them appropriated and adversely used on their respective lands, and as appurtenant thereto; and the said inhabitants had thereby become entitled, as appropriators, to the use of said waters. But in June of that year certain of the inhabitants, riparian owners on Montecito creek and its tributaries, of which Hot Springs creek was one, posted above the head of the ditch used by the inhabitants, and caused to be recorded, a notice of appropriation of the waters of the creek, for the purpose, as expressed in said notice, "of furnishing themselves and other riparian proprietors upon said [Montecito] creek and its tributaries with water for household and domestic purposes, watering stock, bathing, irrigating grounds, lands, and premises, propelling machinery," etc., "and for the purpose of selling and supplying for like purposes water to other inhabitants," etc.; and in August, 1877, a corporation was organized by these parties, named the Montecito Water Company, having, as expressed in its articles, the same objects, but, as found by the court, its principal object being to supply with water themselves and others entitled, as riparian proprietors or as appropriators, to the use of the waters of said creek. By this corporation the waters of the creek were diverted, by means of a pipe connecting with the creek above the head of the old ditch, and distributed among the inhabitants of the Montecito "who were riparian owners of said creek, and to other persons in said Montecito whose lands were in the neighborhood of said creek, though not riparian thereto." Of the persons thus supplied, most were stockholders of the company, who were supplied with water as such; but others who were not stockholders were also supplied, and charged monthly rates for the use of the company's works and for the water supplied them. Among the latter were Lorenzana and wife, the

occupants of the place now owned by the plaintiff; and they and the plaintiff have respectively ever since been supplied with water by the Montecito Water Company and its successor, the defendant, at the monthly rate of one dollar. After the formation of the former company most of the persons entitled to water, and finally all other than the Lorenzanas and the plaintiff, became stockholders of the corporation.

Upon this state of facts, leaving out of view the question of variance, it is clear the plaintiff was entitled to recover. His predecessors in title, the Lorenzanas, it is expressly found, were in the year 1877 entitled to the use of the water of the Hot Spring creek in common with other owners of land in the Montecito. Nor were any of the subsequent transactions of the parties of a character to affect their rights or those of the plaintiff. The appropriation and use of the water by the predecessor of defendant were not adverse. On the contrary, it is found that the principal object of the original incorporation was the distribution of the waters of the creek among those entitled to it; and the conduct of the defendant in carrying out this object, and the acquiescence of the other parties, must be taken as constituting a contract between them and the defendant, imposing upon the latter the obligation to distribute the water according to the rights of the parties, and upon the former the obligation of paying a reasonable proportion of the expenses incurred in carrying out this object. It may be said, therefore, that the plaintiff's right to the water he has been using is supported by an uninterrupted prescription of over thirty years, confirmed by contract, and that, so long as the defendant continues to divert the water of the creek, it will remain subject to the obligation of delivering to the plaintiff his share upon the payment of reasonable rates.

As to the supposed variance, we do not see there is any. For not only has the water in question been appropriated for sale, rental and distribution, within the language and intent of the provisions of section 1, article 14, of the constitution (Price v. Irrigating Co., 56 Cal. 433; McCrary v. Beaudry, 67 Cal. 120, 7 Pac. 264; Merrill v. Irrigation Co., 112 Cal. 426, 44 Pac. 720; Crow v. Irrigation Co., 130 Cal. 309, 62 Pac. 562, 1058), but the original appropriation of the water to the use of the inhabitants of the Montecito was it-

self an appropriation to public use, and the waters thus appropriated came, impressed with this use, into the hands of the predecessor of the defendant, which thus became charged, and its successor after it, with the administration of the use (Bouv. Law Dict., ''Public Use''; Pocantico Waterworks Co., v. Bird, 130 N. Y. 249, 259, 29 N. E. 246, and authorities cited; Witcher v. Holland Waterworks Co., 66 Hun, 619, 20 N. Y. Supp. 560; Lewis, Em. Dom., c. 7). Nor is the use to which the water was originally appropriated any the less a public use because of the fact that all of the beneficiaries, other than plaintiff, have become stockholders of the company. Upon the facts found, the original corporation is to be regarded, so far as the water in question is concerned, as a mere agency of the parties entitled to the use of the water, whether stockholders or others, for the purposes of distribution: Shorb v. Beaudry, 56 Cal. 446. It acquired no rights to the water by its notice of appropriation, except to the surplus after the satisfaction of the public use. Nor does it appear to have since acquired any further rights, either by purchase or by prescription.

It is, however, objected that the evidence is insufficient to justify the finding as to the rights of the predecessors of the plaintiff and other inhabitants of the Montecito to the use of the waters in question; the specific objection being ''that no use is shown that is definite enough to constitute an appropriative right in any individual.'' But it is well settled that an easement may be acquired by an unincorporated community, as well as by individuals—the only difference being that in the former case it is said to be acquired by custom; in the latter, by prescription: Washb. Easem. 7, 137, 146; Godd. Easem. 18; Co. Litt. 113a et seq. But where the rights thus acquired by the community are appurtenant to the several lands of the individuals composing it, there is acquired also by each owner an individual right; the relations of the parties being analogous to those of partners, or the members of unincorporated associations, or other joint owners. There may be, therefore, at the same time a public easement in the community, and a private easement in each of its individual members (Jones, Easem., sec. 82); and the individuals entitled to the use may, where their rights are attacked. avail· themselves of either or both.

It is further objected that the plaintiff and his predecessors received the water allowed them under certain conditions prescribed by the by-laws of the company, and thus became restricted, either by way of contract or estoppel, to the use of the water at the option of defendant. We do not quite understand the argument, but, whatever might otherwise be its force, it is sufficiently met by the fact that there is nothing to show that they knew of or accepted any conditions affecting their rights.

Finally it is claimed that it appears from the evidence that from 1877 to 1885 Lorenzana was not supplied from the pipes of the company, but got such water as leaked from its flume only. But how this is, we need not inquire. The question is not whether Lorenzana acquired a right by user, but whether he lost his right by adverse user of the defendant or its predecessor, and we find nothing in the evidence to justify the latter conclusion. So, also, it is not denied that he has received water from the defendant ever since 1885.

We advise that the judgment appealed from be affirmed.

We concur: Gray, C.; Chipman, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment appealed from is affirmed.