[No. 6,036.—In Bank.]

# W. O. PRICE v. THE RIVERSIDE LAND AND IRRIGATING COMPANY.

WATER COMPANIES—CORPORATIONS—IRRIGATION.—Every corporation deriving its being from the Act of May 14th, 1862, "to authorize the incorporation of canal companies, and the construction of canals "—whether incorporated for other purposes or not—has impressed upon it a public trust—the duty of furnishing water, if water it has, to all those who come within the class or community for whose alleged benefit it was created; and it cannot escape the performance of this public duty as a water company, by the assertion of a right, as another sort of a corporation, to apply all the water to its own uses, or to those of its grantees.

ID.—ID.—ID.— MANDAMUS.— Mandamus is a proper remedy for enforcing this duty.

ID.—ID.— ID.— DEMAND.— It is, however, an imperative rule, that before making an application for a writ of mandamus, an express demand or request must be made on the defendant to perform the act sought to be enforced by the writ; and the demand should be definite and specific.

ID.—ID.—ID.—ID.—JUDGMENT.—In an action for mandamus, the judgment, as well as the preliminary demand, should be for specific and certain relief, such as defines clearly the rights of the plaintiff, and distinctly fixes the obligation imposed upon the defendant.

ID.—ID.—ID.—(MYRICK, J. concurring.) Section 552 of the Civil Code furnishes the rule by which the rights and duties of parties in this and similar controversies are to be determined.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Eighteenth District Court, County of San Bernardino.   MCNEALY, J.

*Waters & Swing*, and *Thom & Ross*, for Appellant.

There was no *specific* demand. (Angell & Ames on Corp. 719, 706, 723 ; High on Ex. Rem. §§ 12, 13 ; Moses on Mand. 201 ; Tapping on Mand. 282 ; *People* v. *Romero*, 18 Cal. 90 ; *Crandall* v. *Amador Co.* 20 id. 75 ; *O. & V. R. R. Co.* v. *Plumas Co.* 37 id. 363.)   The writ of mandate does not lie in this case. (Code Civ. Proc. §§ 1085, 1086 ; Angell & Ames on Corp. 726 ; Wood's Law of Nuisances, § 769, and notes to page 816.)

The association was a private corporation, not a public one, in the sense of a railroad company ; and was not obliged to furnish water to the public. (*Miner's Ditch Co.* v. *Zellerbach*, 37 Cal. 588–590.)   Section 552 of the Civil Code is void for un-

certainty, and is also unconstitutional.    (Cooley on Cons. Lim. 279, 280.)

*J. W. Northe*, *H. C. Rolfe*, and *J. W. Satterwhite*, for Respondent.

Mandamus is the proper remedy in this action.    (Code Civ. Proc. § 1085 ; *Kennedy* v. *Manhattan Gas Light Co.* 30 How. Pr. 85.)    The water was appropriated for public purposes ; and as a consequence, the company can exercise the right of eminent domain (*Miner's Ditch Co.* v. *Zellerback*, 37 Cal. 543 ; *Swan* v. *Williams*, 2 Mich. 435, 436 ; Code Civ. Proc. § 1238, subd. 3) ; and is under a corresponding obligation to serve the public impartially.    (*Sadler* v. *Langham*, 34 Ala. 311; *Tyler* v. *Beacher*, 44 Vt. 648; S. C. 8 Am. Reports, 398; *Harding* v. *Goodlett*, 3 Yerg. 41.)

McKINSTRY, J.:

The purposes for which defendant was incorporated, as set forth in its *articles*, were :   " To buy, own, occupy, improve, and sell or otherwise dispose of any lands and real estate in the State of California, and any personal property; to acquire and hold any water rights and privileges, and to use and dispose of the same ; to conduct and maintain ditches and canals, and all easements and rights appertaining thereto, for the purpose of taking and conveying water for irrigation, milling, manufacturing, or other purposes; to make, purchase, maintain, hold, and use all dams, reservoirs, ditches, sluices, canals, aqueducts, and structures connected therewith; to furnish, sell, give, and supply water to any person or corporation, for irrigation, mechanical or other purposes ; to make improvements, borrow money, and transact any and all business and things connected with the business of the corporation, or relating thereto."

It is not necessary to inquire whether a *single* corporation can be formed under more than one of the statutes, or be clothed with the powers and franchises conferred upon two or more of the separate classes of corporations such as may be created under different laws.    It is quite certain that defendant cannot escape the performance of a public duty which it assumed on its

attempted incorporation as a water company by the assertion of a right, as another sort of corporation, to apply all the water to its own uses, or to those of its grantees.    So far as the appropriation, purchase, or condemnation as to a public use of waters for irrigation purposes, as also their distribution for rates or tolls, is concerned, defendant cannot deny that it is a "canal" company.    Each person entitled to water, on the theory that such companies are charged with the duty of disposing of it for proper compensation, is entitled to treat with defendant as if it had been organized exclusively under the Act of May 14th, 1862, "An act to authorize the incorporation of canal companies and the construction of canals."    (Stats. 1862, p. 540.) The rights and privileges which may be claimed and exercised by defendant with respect to water are derived from that act. With reference to such rights and privileges, and their corresponding obligations, the defendant is at least a corporation *de facto*; it cannot successfully assert the one and disregard the other.    Every corporation deriving its being from the act above cited has impressed upon it a public trust—the duty of furnishing water, if water it has, to all those who come within the class or community for whose alleged benefit it has been created. Every such corporation may exercise, on behalf of the public, the power of *eminent domain*; and no man nor company of men, incorporated or otherwise, can take the property of a citizen for his or their own exclusive benefit.    So plain a proposition cannot require elaboration.    The power—in its nature a public power—and the public duty are correlative.    The duty exists without any express statutory words imposing it wherever the public use appears.    Nor is it necessary, as the case is presented, to deny that a corporation may be formed to furnish with water, for purposes of irrigation, a particular community, or even a particular territory, provided the territory is not in the exclusive occupation of the corporation itself.    This defendant was organized "to furnish, sell, give, or supply water to any *person* or corporation, for irrigation, mechanical or other purposes." Even assuming that the duty imposed on defendant by its articles of incorporation, and the law under which it was created, could be *limited* by a transfer to it from the Southern California Colony Association of *its* "rights, franchises, and privileges,"

the last-named corporation was organized to furnish, etc., water to people of the town and colony mentioned in the complaint, " and others " in the townships specifically set forth, for irrigation and other purposes. The plaintiff's land is a portion of one of the townships named in the complaint, and the articles of incorporation of the Southern California Colony Association. The defendant, therefore, is bound to furnish plaintiff with water to irrigate his lands on his payment of the rates fixed in the manner prescribed by law—it having the water to furnish.

The case shows that defendant has an ample supply of water to furnish the quantity demanded by those entitled to receive it, including the quantity alleged on argument to be needed by plaintiff.

The rates which defendant may charge have never been fixed in the manner required by law, but defendant has itself fixed the rates, and could not be permitted to refuse water to one otherwise entitled to receive it who should offer to pay those rates. It is not necessary to inquire whether, until the rates are fixed in the legal mode, defendant could be compelled to furnish water to the extent of its capacity free of charge.

That plaintiff may resort to *mandamus* as a means of securing his right, must be regarded as settled in this country. (Moses on Mandamus, 155, 171; *State* v. *Hartford & New Haven R. R. Co.* 29 Conn. 538; *The Borough of Uniontown* v. *Commonwealth*, 34 Pa. St. 293; *Maddox* v. *Graham*, 2 Metc. Ky. 65; *Fremont* v. *Crippen*, 10 Cal. 211 ; *Napa V. R. R. Co.* v. *Board of Supervisors of Napa County*, 30 id. 438.)

It is, however, an imperative rule, that, before making an application for a writ of mandamus, an express demand or request must be made on a defendant to perform the act sought to be enforced by the writ. (Moses on Mandamus, 201 ; Angel & Ames on Corp. 706, 719, 723 ; Tapping, 282.) The allegations of the complaint supposed to imply a demand are not denied by the answer. But the only allegations which relate to the matter of demand or request are as follows :

" That this applicant has always paid the respondent, and its predecessor in interest, the said Southern California Colony Association, the regular rates and charges for the water used by him upon his said tract of land and premises, and is still

willing and ready and offers to pay such rates and charges at
and upon the same rates, price, and terms that the same is or
may be supplied to all others for similar purposes; but the re-
spondent has refused and does refuse to supply to this appli-
cant, or allow him the use or flow of, the water from said upper
ditch, to irrigate or sustain his said trees, or for making or sus-
taining any future improvements upon his said premises at or
upon the same regular price, rates, or terms as aforesaid, for
which it furnishes its said water to its customers using the
same, or at or upon any regular price, rates, or terms for which
it furnishes its said water to its customers, and refuses to fur-
nish applicant any water at all for any future improvements,
trees, vines, or crops upon his said premises; and on the 30th
day of April, 1877, the defendant caused the supply of water
upon his said premises aforesaid to be diverted therefrom and
stopped, and threatened to stop and divert such supply upon
his said premises for all purposes except for watering his said
alfalfa patch."

This is not an averment, that, previously to making applica-
tion for the writ, plaintiff made distinct and express demand
upon defendant for a supply of any specific quantity of water—
tendering or offering to pay the amount which should be paid,
reference being had to the rates fixed by defendant; nor is
there an averment—supposing defendant to be compellable to
furnish water without the payment of any charge—of a dis-
tinct demand for any specific quantity. The plaintiff does not
*pray* that defendant be commanded to furnish any particular
quantity. The judgment of the Court below—following the
prayer of the complaint—is, that defendant furnish and supply
the plaintiff, on demand and payment of the regular rates,
"such quantity or amount of water   *   *   *   as may be re-
quired for irrigation, domestic use, and other useful purposes,
upon his premises."

When we say the preliminary demand must be definite and
specific, we are to be understood as saying that it must be as
certain as the subject-matter of the litigation, which may fol-
low a refusal, will admit of. The demand in a case like that
before us should have reference to the system of charges, if
any, established in the mode prescribed by law. If, for example,

the rate is fixed at a certain sum per gallon, or thousand gallons, the demand should be for a quantity of water equal to a certain measurement in gallons; if rates are fixed with reference to *acreage*, as so much money for sufficient water to irrigate each acre, the demand should point to that mode of estimating the quantity to be supplied. The demand should be so definite as that defendant should have his option to comply with it, or to defend the action.

The plaintiff did not precede his application by a specific demand; neither did he ask in his complaint, nor did the Court, by its judgment, afford him that specific and certain relief which *mandamus* can be used to secure, such as defines clearly the rights of the plaintiff, and distinctly fixes the obligation imposed upon the defendant. The specific demand is a prerequisite to the commencement of the proceeding. A failure to allege such demand may therefore be taken advantage of by general demurrer.

Judgment and order reversed, and cause remanded, with directions to the Court below to sustain the demurrer to the complaint.

SHARPSTEIN, J., and THORNTON, J., concurred.

MYRICK, J., concurring:

I concur in the judgment, for the reason herein stated:

The petitioner Price applied to the Court below for a writ of mandate compelling the respondent, the Riverside Land and Irrigating Company, at all times, upon demand, to furnish to him, his heirs, successors, or assigns, such quantity of water from the (so-called) upper ditch as may be required for irrigation, domestic, and other useful or beneficial purposes, upon his premises, at the rates of: for a two-and-one-half-inch stream, thirty-six dollars per year; for a five-inch stream, sixty dollars per year, and in the same proportion; for a domestic stream, twenty dollars per year; for extra water, two and one-half cents per inch per day of twelve hours, and four cents per inch per day of twenty-four hours, and that no distinction be made in the rates, price, and terms for furnishing him water, and for furnishing any other parties; and that he recover six hundred dollars dam-

ages and his costs. The defendant demurred, and the demurrer was overruled.

Upon the issues tendered by the answer, testimony of the respective parties was heard by the Court, and findings were filed in substance as follows :

That the Southern California Colony Association was formed and incorporated September 14th, 1870, for the purpose of settling a colony of people in San Bernardino County, and of acquiring and furnishing lands and town sites for the settlement of said colony, and of buying, holding, selling, conveying, renting, leasing, and dealing in lands generally, for the purpose of appropriating all the unappropriated water of the Santa Ana river by separate ditches, and conveying it upon the lands in sixteen specified townships, and using or furnishing and selling the same to the people of said town and colony, and others in the townships named, for irrigation, domestic use, milling, manufacturing, water power, and mining purposes, and conveying said water in ditches, sluices, acqueducts, and water-pipes, as utility and convenience may require ; for the purpose of furnishing to said colonists, and others settling in the said locality, lumber, brick, lime, marble, granite, and all other materials for building ; also, seed grain, and other seed, and young trees and shrubs for planting; and for the purpose of doing generally whatever shall be found needful for the welfare and advantage of said colony. That, prior to the transfer, the Southern California Colony Association diverted and appropriated from said river about 1,500 inches of water, and by means of canals and flumes (called the upper ditch), conducted a constant flow of water of the amount aforesaid upon the lands above mentioned, to a point at the line between its land and the public land; and in 1875, the respondent, by means of a continuation of said upper ditch, and in pursuance of the objects and purposes aforesaid of respondent and of said Southern California Colony Association, conducted said stream farther on, and past the premises of petitioner; that in 1871, by agreement between the Southern California Colony Association and the settlers on the Government land (among whom was Travers, petitioner's grantor), said settlers were to have water from the ditch at the same rates at which it was sold to other customers,

and the same as sold to parties who had purchased lands of the Association, but the settlers were to construct their own distributing ditches, connecting with the main ditch, which was then completed to within half a mile of the Government lands, and partially constructed a half-mile into the Government lands. That, in pursuance of such agreement, said Travers, with another claimant, constructed a ditch nearly a mile in length, connecting with the main ditch, and running upon the lands of Travers and the other claimant. That in 1875, under permission from Travers, the Riverside Land and Irrigating Company, having acquired the property of the Southern California Colony Association, enlarged said ditch, and put gates in to accommodate and irrigate said Travers's claim. After petitioner had purchased forty acres of Travers's claim, the Riverside Land and Irrigating Company put a gate upon said ditch especially to irrigate petitioner's claim. That after the enlargement of the ditch, it was understood between the settlers and the company that the company was to have the control and management of all their distributing ditches so constructed by them, in order to facilitate its business of distributing and supplying said settlers with water. That after the construction of the Travers ditch, the Southern California Colony Association and the Riverside Land and Irrigating Company, during the time of their respective ownership, furnished to Travers, through said ditch upon his land, all the water required by him to irrigate the same and for domestic use, and also to the other settlers on the Government lands, at its regular rates, and upon the same terms and conditions as it furnished water to purchasers of its own lands; and after petitioner's purchase of Travers, the Riverside Land and Irrigating Company in the same manner furnished water to petitioner until April, 1877, when he demanded a further supply of two and one-half inches of water, which he required on his place in order to plant fruit-trees, grape-vines, and alfalfa, for which he offered to pay the regular rates; but the Riverside Land and Irrigating Company refused to furnish such additional supply, and would supply only to the extent that he had theretofore used on his premises, and refused any water for new and additional improvements, whereby he was prevented

from planting fruit-trees, grape-vines, and alfalfa, and has thereby suffered damage three hundred dollars. That the settlers on the Government land, including Travers, settled thereon upon the faith and belief of being supplied with water from the company's ditch, and there is no other supply; that the lands are within the flow of the ditch, and can be readily irrigated therefrom. That there was talk among the settlers in regard to conveying to the Southern California Colony Association, in consideration of a water right in said ditch, one-half of their claims, but the settlers disagreed among themselves, and no agreement was made; they neither had nor have title to the land, though they were qualified pre-emptors, and occupied the land as such. The Southern California Colony Association, with knowledge of these facts, at all times furnished to the settlers, at its regular rates, all the water required by them on their respective tracts. Travers repudiated any pretended agreement, and claimed the right to purchase water at the regular rates, and with full knowledge thereof he was furnished with water. That petitioner bought his land on the faith of being supplied, at the regular rates, with water for his lands, and at the time of purchase had no notice of said pretended agreement. That the rates as stated in the petition are true. That there has been at all times, and is, water sufficient running in said main ditch to supply all parties occupying lands within the flow of the ditch; and all parties occupying lands within any of the tracts set forth in the articles of incorporation of the Southern California Colony Association, and the Riverside Land and Irrigating Company, has at all times had in both and each of its ditches more than sufficient water to irrigate lands occupied by parties, and within the flow of said ditches respectively; but neither the Southern California Colony Association nor the Riverside Land and Irrigating Company have ever had flowing sufficient water to irrigate the irrigable lands within the flow of its ditches and owned by it. A large portion of lands owned by said corporations are unoccupied and uncultivated.

Upon the findings, judgment went for petitioner, as prayed for, and for $300 damages and for costs.

This judgment should be reversed, for want of findings suffi-

ciently definite upon some points ; such as, how much water had been used upon petitioner's land by the consent of the corporation prior to April 3rd, 1876, for error as to the quantity of water to which petitioner is entitled, and for error in giving the judgment for damages. It seems to me quite too speculative to give damages resulting from being prevented from planting fruit-trees and grape-vines.

The right of the corporations mentioned in this case to appropriate the waters of Santa Ana river for the purposes indicated, is based upon the laws of this State; therefore, the corporation, in appropriating and using the water, must be governed by such laws. The right of petitioner to be supplied with water by the corporation is also based upon the laws of this State. Section 552, Civil Code, is the only section to which attention has been called which furnishes a rule by which the rights and duties of the parties to this controversy are to be determined. That section reads as follows :

" Whenever any corporation, organized under the laws of this State, furnishes water to irrigate lands which said corporation has sold, the right to the flow and use of said water is and shall remain a perpetual easement to the land so sold, at such rates and terms as may be established by said corporation in pursuance of law. And whenever any person who is cultivating land on the line and within the flow of any ditch owned by such corporation has been furnished water by it with which to irrigate his land, such person shall be entitled to the continued use of said water, upon the same terms as those who have purchased their land of the corporation."

In my opinion, under that section, the water conveyed by the ditches of the corporation is to be distributed, and persons have the right to be furnished by it with water, in the following order:

1. Persons who, on or before April 3rd, 1876, purchased land from the corporation (either the Southern California Colony Association or the Riverside Land and Irrigating Company), and were furnished by it with water for the irrigation of the land so purchased, have the right to have the supply of water continued in the same quantity (if it can be done without interfering with the right of any other in the same condi-

tion), and such right remains a perpetual easement running with the land.

2. If any person, on or before April 3rd, 1876, cultivated land within the flow of the ditches, and was furnished by the corporation with water for irrigation, such person and his grantees are entitled to have the same quantity of water continued for irrigating the same land, on the same terms as those who have purchased land of the corporation, regard being had to the rights of others in the same condition.

3. Persons who purchased land of the corporation on or before April 3rd, 1876, have the right to be furnished by the corporation with water sufficient to irrigate the land so purchased (regard being had to others in the same condition), and such right remains a perpetual easement running with the land.

4. Persons who have purchased, or shall purchase, land of the corporation subsequent to April 3rd, 1876, have the right to be supplied by the corporation with sufficient water to irrigate the land so purchased; and such right remains a perpetual easement running with the land; such rights to date in order of purchase.

5. All other persons applying (to the reasonable capacity of the ditches) upon the terms and at the rates which are or may be established by law; the rights to date in order of application.

It will be observed, that the date of the taking effect of § 552 is a starting point from which to regard the rights of all parties. Persons purchasing land of the corporation before that date have a right superior to all others to the quantity of water with which they had been supplied. Next in order come persons owning outside lands, who have been actually supplied with water; and to the amount of such supply, the corporation cannot arbitrarily cut them off. They, however, have not the right of additional supply to the detriment of the first purchasers of land theretofore untilled. Neither have they the right to increase their demands to the detriment of the subsequent purchasers of lands from the corporation. By the terms of the section (see first clause) all persons purchasing land of the corporation are to have the right to be supplied with water; and it remains *a perpetual easement to the land.* If an outside owner, who on April 3rd, 1876, had but five inches of water,

could increase the amount without regard to subsequent ven-
dees, the latter might not enjoy the right of a perpetual ease-
ment—there might be no water to flow—it might have been all
taken by outside owners.

It is for the Legislature to fix, under the Constitution, the
rights, powers, and duties of corporations; and in the section
above quoted, the Legislature has seen fit to give purchasers of
lands from a corporation the right to have it continue furnishing
water to them, such right to be a perpetual easement.   As
against such purchasers, other parties have, under that section,
a right to be supplied only to the amount which may have been
furnished.   The question as to which would be the wisest, to
give purchasers from the corporation a preference, or to compel
the corporation to furnish to all applicants indiscriminately, is
for the Legislature to determine.

[Mr. Justice Ross, being disqualified, took no part in this
decision.]