[Civ. No. 85.    Third Appellate District.—December 9, 1905.]

## F. B. COZZENS et al., Appellants, v. NORTH FORK DITCH COMPANY, Respondent.

MANDAMUS—DISTRIBUTION OF WATER FOR USE ON LANDS—PUBLIC USE— ENFORCEMENT OF RIGHTS INDEPENDENT OF CONTRACT.—Water appropriated from a river for the purpose of selling, renting and furnishing the same for irrigation and other useful purposes is held by the water company owning the same upon a public trust; and it owes a public duty which will be enforced independent of any contract. Any person cultivating land within the flow of its ditch' and water system who has been furnished water by such water company with which to irrigate his land is entitled to the continuous use of it upon the same terms as those who have purchased their lands from the company and is entitled to a writ of mandate to compel it to furnish the quantity needed, provided it has a sufficient supply for all the lands within its flow requiring water.

ID.—INSUFFICIENT PETITION—SUFFICIENCY OF SUPPLY OF WATER.—A petition for a writ of mandate to compel the furnishing to plaintiffs of a continuous supply of water which merely alleges that the defendant water company "is the owner of a sufficient quantity of water to supply plaintiffs with all the water necessary for their use," but does not allege that the quantity is sufficient to supply plaintiff and all others equally entitled to water the quantity required, is insufficient, and a demurrer thereto was properly sustained.

APPEAL from a judgment of the Superior Court of Sacramento County. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

L. T. Hatfield, for Appellants.

A. L. Shinn, and W. F. George, for Respondent.

BUCKLES, J.—This was an application to the superior court of Sacramento county for a writ of mandate to compel the defendant to furnish plaintiffs sixty-six thousand gallons of water per day for irrigating fruit trees and for domestic uses. A demurrer was interposed to the petition; the main objections being that the petition does not state facts sufficient to authorize the issuance of a writ of mandate, because the demand was based upon a certain water right and contract which provided for furnishing other lands along said ditch with certain quantities of water, and the petition fails to state whether the defendant has sufficient water to furnish for irrigating said other lands and to give the plaintiffs the water demanded. There were many other objections to the petition raised by said demurrer, but it seems to have been sustained upon the ground above stated. The plaintiffs decline to amend, and judgment was rendered denying the writ; hence this appeal.

The defendant is the owner of a water system established for the purpose of furnishing water for irrigating a large tract of land in the San Juan grant, Sacramento county, and for domestic use. The owners of said land to be irrigated from said system caused the same to be subdivided into lots, and sold the same to different purchasers. The plaintiffs became the purchasers and owners of three of said lots, to wit, lot 1 in block 11, and lots 5 and 7 in block 12, containing thirty acres in all, and became the owners of a water right from defendants.

The said water right is as follows, to wit:

"WATER RIGHT.

"This agreement (subject to the terms and conditions of a certain contract made and entered into on the 14th day

of April, 1896, and April 14, 1899, between first parties hereto and the Howard & Wilson Publishing Company), made and entered into this 18th day of April, 1900, by and between C. W. Clarke, H. G. Smith and A. N. Buchanan, all of the city of Sacramento, hereinafter designated parties of the first part, and J. F. Thompson, hereinafter designated party of the second part, as follows: Whereas, on the 18th day of March, 1895, the Howard & Wilson Publishing Company, a corporation, organized under the laws of the state of Illinois, entered into a contract in writing, wherein it agreed to buy from C. W. Clarke and Frederick Cox certain land in the county of Sacramento, and state of California, consisting of about 7,500 acres and being part of the San Juan Grant, upon certain conditions in the said contract stated, one of said conditions being that the said Clarke and Cox should make arrangements satisfactory to the said publishing company for water to irrigate said lands; and whereas, the land agreed by said publishing company to be purchased by it, as just stated, has been by it surveyed and platted in tracts or subdivisions, and the intended location of the laterals hereinafter mentioned, marked on said plat in red ink, which plat, with the laterals so marked thereon, was filed in the office of the county recorder of the said county of Sacramento, on the —— day of ————, and the same is hereby referred to and made part hereof; and whereas, the parties of the first part are the owners of water and water rights, and are now prepared to supply water to the main pipe line constructed by the Howard & Wilson Publishing Company for the purpose of irrigating the same, and the party of the second part has purchased, or agreed to purchase, from the said publishing company the tract or subdivision of land marked on said plat and hereinafter particularly described.

"Now this agreement witnesseth:

"First—That in consideration of the sum of one dollar, in gold coin of the United States, the receipt of which is hereby acknowledged, and the observance by the party of the second part of the covenants and agreements in this contract contained, the parties of the first part hereby agree to furnish to the party of the second part from main canal, main pipe line or laterals, at the point most convenient

to the party of the second part on said main canal as afore-
said, at the rate and subject to the conditions and re-
strictions hereinafter stated, all the water necessary to
irrigate the following described tract or subdivision of said
land platted on said plat, and particularly described as
lots 5 and 7, block 12, and lot 1, block 11, Fair Oaks ad-
dition, and all water required for domestic uses from the
1st day of April, 1900, to the first day of June, 1946; pro-
vided, that the parties of the first part shall not, at any
time during said period, be required to furnish water for
the purpose which has been done by second party of irri-
gating said tract of land just described on a basis exceed-
ing twenty-four hundred (2,400) gallons per acre for every
twenty-four hours for oranges, and a corresponding amount
for other trees and products as per schedule hereinafter
set forth.

"Second—It is understood and agreed by and between
the parties hereto, that the obligation of the parties of the
first part to furnish water with which to irrigate said tract
of land above particularly described, as is hereinbefore pro-
vided, is only to furnish such water from the main canal
or main pipe line or laterals at a point on said canal, pipe
line or laterals most convenient for such purpose, and the
willingness of the parties of the first part to furnish said
water at said point shall be a compliance with the require-
ments of this contract on their part to furnish water to ir-
rigate said land, and they shall not be required to other-
wise conduct water to said tract of land above particularly
described, except as hereinafter provided, and all water sup-
plied by virtue hereof shall be measured, and the quantity
thereof used by the party of the second part ascertained
at the point of the diversion from said main canal or main
pipe line or laterals; provided, that if the said party of
the second part shall desire water to be conducted from
said main canal or main pipe line to the said tract of land
above particularly described, he shall first construct or
cause to be constructed, at his own cost and expense, ser-
vice pipes or conduits, with their connections with the
main pipe line or laterals necessary and sufficient for such
purpose.  Upon completion of the service pipes or conduits
necessary to conduct water to the tract of land above par-

ticularly described and the making of said connections as above provided, it shall then be incumbent upon the parties of the first part to supply water with which to irrigate said tract of land and for domestic uses, for the period and subject to the limitations mentioned in the first subdivision hereof, and at and for the same rates hereinafter mentioned. After the main pipe lines and laterals have been built and such connections made, the same shall be under the exclusive care of the parties of the first part, and shall be by them kept in good order and repair, and the expense of such care and cost of such repairs shall, as to each of such laterals and main pipes, be paid by all owners of tracts or subdivisions of land marked on said plat, touched by or to which water is or may be conducted by such lateral or main pipes, such payments to be severally made by the owners of said tracts or subdivisions in the proportion that the number of acres in each of said tracts bears to the whole number of acres in all the tracts touched by such lateral or to which water is or may be conducted by it; and the party of the second part hereby imposes upon said tract of land above particularly described a burden and charge in the nature of a continuing lien for the payment of said tract's share of said 'cost and expenses as just provided, which burden and charge shall be perpetually appurtenant to and shall run with and bind said tract of land.

"Third—That the party of the second part shall not use or permit the water furnished under this agreement to be used on any land except the land above particularly described, nor permit such water to run on contiguous land or spread out on low places, or in any way to run to waste.

"Fourth—That the parties of the first part, for the purpose of enlarging their ditch or pipe line, or for the purpose of general or special repairs of their reservoirs, ditches, pipe lines, laterals, gates, connections, or for any other necessary purpose, may shut off the water for such length of time as may be absolutely necessary.

"Fifth—That the parties of the first part shall not be responsible for a deficiency of water caused by drought, insufficiency of water in the river from natural causes only,

interference, obstruction, hostile diversion, floods or accidents; provided, that the parties of the first part use due diligence in maintaining the full supply of water and in protecting and repairing said ditches and pipe lines.

"Sixth—That the parties of the first part may, at their option, sell, rent and distribute water from time to time for any purpose whatever, to the full capacity of the main ditch or canal or pipes on any point on said ditch or canal or pipes, either on or off of said land so platted on said plat, as aforesaid, not exceeding the quantity of water now, or hereafter owned, appropriated or acquired by them; provided, that such sale or diversion of water shall not reduce the volume of water in said main canal or pipes or laterals below the requirements of irrigation, domestic and public uses on lands referred to in this contract, and if at any time the quantity of water in said main ditch or canal shall fall below the capacity of said main ditch or canal or pipes, other than for the reasons above specified, then each water right or privilege so rented or otherwise granted by the parties of the first part, including the right of the party of the second part by virtue hereof, shall be scaled down so that each person entitled to water from said main ditch or canal or pipes or from said laterals, instead of receiving the quantity he would receive if said main canal or ditch or pipes were full, shall only receive his proportionate share of the water in said ditch or canal or pipes, and the quantity so received shall satisfy the covenants in this contract contained.

"Seventh—That the right of water acquired by the party of the second part under this agreement shall be appurtenant to said land, and shall run with said land and be transferred only by transfer of the same; and all covenants herein contained to be performed by the party of the second part shall run with and bind said land.

"Eighth—That the party of the second part, his heirs, personal representatives and successors in interest, hereby grants to the parties of the first part, and their heirs and assigns, the right of way and rights of way through, upon and over the said land above particularly described, with the right to enter upon the same for the purpose of con-

structing and using thereon canals, ditches, pipes and laterals, and therein conveying and flowing water to, on or through and across said land so platted on said plat, as aforesaid; and also for the purpose of making all necessary connections with said canals, ditches, pipes and laterals, and for maintaining, caring for and repairing the same at any and all times during the continuance of this contract.

"Ninth—That the party of the second part, and his successors in interest in said land above particularly described, hereby promises and agrees and covenants to pay, and shall and will annually pay to the party of the first part, their heirs or assigns, at Sacramento City, in gold coin of the United States, on the 1st day of November for the year Apr. 1, 1900, and until June 1st, 1946, the following prices and rates for said water for irrigating purposes, to wit: (a) For all water used for irrigating citrus fruits, the sum of $4 per acre per year; (b) for all water used to irrigate deciduous trees and vines, including olive trees three years old and over, alfalfa, garden truck or berries, $3 per acre per year; (c) for deciduous trees and vines, less than three years old, $2 per acre per year; (d) for grain, $1 per acre per year; (e) for domestic uses, including water for household purposes, lawn and garden, not exceeding 2,000 square feet, $1 per month. The maximum quantity of water allowed for any of said purposes being on the basis of 600 gallons in twenty-four hours for each $1 per year charged for its use. All sums which shall become due under this contract, if not paid at maturity, shall bear interest at the rate of 10 per cent. per annum until paid, and if suit is brought for the collection of the same, the party of the second part agrees to pay all costs and attorney's fees incurred in the collection thereof, and all such sums and such costs and attorney's fees shall be a lien upon the land above particularly described.

"Tenth—That any violation of this agreement by the party of the second part, his successors or assigns, shall, at the option of the parties of the first part, their heirs and assigns, render this agreement, except subdivisions seventh and eighth, null and void.

"Eleventh—That the parties of the first part may, at all times during the continuation of this contract, have the supervision of the use and distribution of said water, and may adopt and enforce any and- all reasonable regulations subject to the provisions of this contract for the use and distribution thereof, and all such regulations, when adopted by them, and notice duly given to the party of the second part, shall be binding upon the party of the second part and said land above particularly described; and on and before the first day of April of each year the party of the second part shall designate in writing to the parties of the first part the quantity of water he requires for all or any of the purposes mentioned in the ninth subdivision hereof, and unless such notice is given, the quantity of water that the party of the second part shall receive that year for all or any such purposes shall be optional to the parties of the first part, subject to the conditions set forth in article six (6) of this contract, and the reasonable requirements for water of the party of the second part.

"Twelfth—That the right to use water for irrigating said land above particularly described, as hereinbefore provided, is optional with the party of the second part from year to year, subject to the covenants and agreements hereinbefore contained, and to the regulations adopted by the parties of the first part for such use; provided, that at the time of signing this contract party of the second part may bind himself to use continuously a definite quantity of water each year this contract continues in force with which to irrigate said land above particularly described. The quantity to be so used to be agreed upon and expressed in this contract at the time of the signing thereof, subject to such modification or change from time to time as the nature and need of the land and the products may demand, and if so agreed upon and expressed, the party of the second part shall pay for the same the prices and rates specified in subdivision ninth (9) hereof, less a discount of twenty-five (25) per cent., and thereafter each year during the time this contract continues in force he shall be entitled to the quantity so fixed, subject to the limitations, restrictions and conditions hereinbefore contained. Second party desiring under this clause to provide for 5 acres of lemons and 10

acres of oranges, other trees desired to be irrigated to be optional with second party from year to year:

                              "J. F. THOMPSON,    [Seal.]
                              "Party of the Second Part.
                              "C. W. CLARKE.     [Seal.]
                              "H. G. SMITH.       [Seal.]
                              "A. N. BUCHANAN.  [Seal.]

"The within and foregoing contract between the parties herein named is hereby, in pursuance of a resolution duly adopted, recognized and adopted as the contract of the North Fork Ditch Company, the successor in interest of C. W. Clarke, H. G. Smith, and A. N. Buchanan, and to the extent and effect that they are affected, this company shall be affected.

"In witness whereof, the North Fork Ditch Company has hereunto subscribed its name and affixed its seal this —— day of July, 1900.

"[Seal.]                    C. W. CLARKE, Pres.
"A. N. BUCHANAN, Sec'y."

The plaintiffs were grantees of J. F. Thompson, both as to the lots mentioned and the water right set out. The petition alleges that the said land of plaintiffs was and is contiguous to and within the flow of the main pipe line of defendant for the carrying of water, and is under cultivation. The petition sets forth: That the water rates are due and payable on the 1st of November of each year, and the irrigating season is from April 1st to November 10th. Plaintiffs notified defendant, before the irrigating season of 1904 commenced, of the amount of water they would need. That defendant is furnishing plaintiffs with water for irrigating, but in quantities less than twenty-six thousand four hundred gallons of water per day during the irrigating season, and that this is delivered at irregular intervals, and defendant states that it will not, at any time, furnish any greater quantity of water. That any less quantity than the maximum, as specified in the water right, is wholly inadequate and insufficient. That said Thompson would not have purchased said lots if it had not been for the terms and conditions of the water right, nor would he have planted said lots to trees, and, but for the said water right, the plaintiffs would not have purchased said lots from said

Thompson. Without the maximum quantity of water the trees will be permanently injured. That defendant has at all times been, and is, the owner of a sufficient quantity of water to supply plaintiffs with all the water necessary for their use.

Under these conditions, facts, and circumstances, and the limitations found in the water right above set out in full, can the writ of mandate be invoked to compel the defendant to do what the plaintiffs claim it should do? The water appropriated by defendant for its system is taken from the North Fork of the American river, and is appropriated for the purpose of selling, renting, and furnishing for irrigation and other useful purposes, and it is therefore in the exercise of a public trust, and, of course, owes a public duty which the law will require it to perform irrespective of any contract. The constitution of California provides (section 1, article XIV) that ''the right of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public trust.'' Section 552 of the Civil Code also provides: ''Whenever any person who is cultivating land on the line and within the flow of any ditch owned by such corporation, has been furnished water by it, with which to irrigate his land, such person shall be entitled to the continued use of said water, upon the same terms as those who have purchased their land of the corporation.'' Not only is the land of plaintiffs being cultivated and within the flow of the ditch and water system of defendant, but it is a part of the tract for which the water was appropriated by defendant to irrigate, and there is therefore a duty, under the law, resting upon the defendant to furnish this tract of land with water; and, had the defendant failed to furnish such water, it could be compelled by a writ of mandate to furnish it in the quantity needed, if it (the defendant) has a sufficient supply for all the lands within the flow requiring water.

As we understand the duties imposed on corporations which have appropriated water for sale and for irrigating purposes, before they can be compelled to perform that duty, there must exist the following conditions; the same appearing in the complaint or petition for a writ: 1. The land for which water is sought to irrigate must lie within the flow

of said ditch; 2. A showing that such corporation has the water in quantity required to supply the one demanding and all the others equally entitled (see *Price* v. *Riverside L. & I. Co.,* 56 Cal. 439) ; 3. That notice be given the irrigating company of the amount of water required (*Price* v. *Riverside L. & I. Co., supra*) ; and 4. Payment of the rates of tender thereof when due, and an allegation of willingness to pay when due (*Price* v. *Riverside L. & I. Co.,* 56 Cal. 439). All of the prerequisites are admitted to be necessary by the appellants, except the second, for they set them out in the complaint, and, as to the second, plaintiffs allege that defendant ''is the owner of a sufficient quantity of water to supply plaintiffs with all the water necessary for their use,'' and do not allege, as we think they must, that the quantity is sufficient to supply plaintiffs, and all others entitled to water, the quantity required. Each water taker in a municipality, by paying the rates fixed, has a right to use a reasonable quantity of the water appropriated for public use, to be used in a reasonable manner (*McCrary* v. *Beaudry,* 67 Cal. 120, [7 Pac. 264]), and this evidently depends upon the supply of water; but the right of one member is no greater than that of each of the others. To illustrate: if the supply should run so low during any season that there remained only enough to supply domestic uses alone, the water company could not supply to any one individual water for irrigating a lawn or garden, and refuse to supply water to others for the same purpose. While there are doubtless many differences between the rules governing the water question, when being supplied to the inhabitants of a municipality, and when being supplied alone to agricultural lands for irrigation, yet we think the same rule applies to both, so far as supply is concerned, except that in the case of one within the municipality would not be required to allege the supply was sufficient to furnish all the inhabitants alike.

In *Price* v. *Riverside L. & I. Co.,* 56 Cal. 439, which was a *mandamus* case, defendant being a corporation formed to appropriate and furnish water to irrigate certain lands of a colony, plaintiff's lands were a part of the colony to be irrigated. The court held the defendant was ''bound to furnish plaintiff with water to irrigate his lands on payment of the

rates fixed in the manner prescribed by law, it having the water to furnish. The case shows that defendant has an ample supply of water to furnish the quantity demanded by those entitled to receive, including the quantity alleged on agreement to be needed by plaintiff.'' It was also held in that case that the rates which the defendant may charge had never been fixed in the manner required by law, but that defendant had fixed the rates and could not be permitted to refuse water to one, otherwise entitled to receive it, who should offer to pay their rates. And that is the case here. In that case there was not sufficient demand, presumably made, nor offer to pay the rates, and this was taken advantage of by special demurrer. *Merrill* v. *South Side Irr. Co.,* 112 Cal. 426, [44 Pac. 720], which was cited by plaintiffs in support of their contention that a writ must issue to compel defendants to furnish the amount of water asked. In that case the mandate did issue and was upheld on the ground that the defendant, in running its main pipe line, passed over the lands of plaintiff, said plaintiff having conveyed a right of way to defendant for that purpose, the consideration being an understanding that plaintiff could have water from defendant's said pipe to irrigate his land, ''the west half of the southeast quarter of section 21, etc., to the extent of one-half the flow of a twenty-two inch round pipe, twice per month, for thirty-six hours each time, once on or about the first day of each month, and once on or about the fifteenth day of each month,'' upon tender of payment of reasonable and customary charges; and after defendant had supplied this water for use on plaintiff's land for a considerable time, it extended its pipe line beyond and below the land of the plaintiff, and began supplying water for lands among the extension of its pipe line, and then took from plaintiff, and sold to others, the water it had been accustomed to furnish her. The defendant was in the exercise of a public use, and had the water to supply her as demanded, and the writ issued. In that case it would seem the contract the defendant made with plaintiff was made prior to the extension of defendant's main line, and certainly not with a view by either party thereto to furnishing other land below plaintiff's with water for irrigating same, while in the case at bar the contract of water right was entered into with the express view of supplying all others in the San Juan grant with water in the same

quantity according to trees planted, and so forth, as to the plaintiff.

The water right contained this clause: "Water will be delivered [at any point on the main line] to the grantees . . . who are the owners of water rights under the before-mentioned contract, at the following rates per acre per year, such rates to be enforced with each after the first year: for oranges and nurseries, $4; for deciduous trees and vines over three years old, for alfalfa, garden truck and berries, $3; for trees and vines less than three years old, $2; for grain, $1. Water for domestic purposes shall be charged for, for each household of six persons or less at the rate of $1 per month and a proportionate rate for a number in excess of six persons." The defendant, under the water right contract, had the right to sell and deliver water to lands either on or off the lands in the said San Juan grant, providing that each sale or diversion of water should not reduce the volume of water in its main canal or pipes below the requirements of irrigation, domestic and public uses on the San Juan grant lands, and if, at any time, the quantity of water should be reduced from any cause other than selling water for other purposes than those mentioned, "then each water right or privilege so rented or otherwise granted by the parties of the first part, including the right of the parties of the second part by virtue thereof, shall be scaled down so that each person entitled to water from said main ditch, or canal or pipes, or from said laterals, instead of receiving the quantity he would receive if said main canal or ditch or pipes were full, shall only receive his proportionate share of the water in said ditch or canal or pipes, and the quantity so received shall satisfy the covenants in this contract contained." It will thus be seen that, when the water right was conveyed to the grantors of plaintiffs, all persons purchasing and owning lands in the part of the San Juan grant subdivided and brought under cultivation would own a similar water right contract, and would be just as much entitled as plaintiff to water to irrigate his trees, vines, grain, and so forth, and to give to plaintiffs the quantity of water demanded might deprive many others of the water they might be entitled to; and, as said by the learned judge of the trial court, "in the absence of a pleading that there are no others who are entitled to the common benefit of the various contracts

attached to plaintiff's complaint, or of a statement of their number, the court might render a judgment in favor of plaintiffs, giving them such an amount of available water as would render the court powerless, in a subsequent suit by another party, based upon the identical instruments here relied upon, and equally entitled with these plaintiffs, to render a similar judgment in the latter case.''

In our opinion the petition must state that the defendant has water in sufficient quantity, not only to supply plaintiffs, but to supply all water takers in compliance with the legal duty imposed upon the defendant. As the complaint fails in this respect, it fails to state facts sufficient to entitle plaintiffs to the writ of mandate prayed for.

The judgment is affirmed.

Chipman, P. J., concurred.

McLAUGHLIN, J.—I concur in the order affirming the judgment. But I do not desire to be understood as concurring in the view that rights purely contractual, even though they relate to the sale, rental, or distribution of water, can be enforced through the medium of a writ of mandate. Mandate will issue only to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. Water appropriated for sale, rental, or distribution is a public use, and subject to the regulation and control of the state. (Const., art. XIV, sec. 1.) Hence, every person, company, or corporation engaged in the sale, rental, or distribution of water may be compelled to furnish water to all who require it, to the full extent of the supply of water under the control of such person, company, or corporation. This is a duty specially enjoined by law, and mandate will lie to enforce it. But the legal duty of the respondent in the case at bar is measured and limited by the quantity of water which it has the ability to supply. When the supply is exhausted by the requirements of those having a legal right to its use, the legal duty as to others ceases. Therefore it was incumbent upon petitioners to show in their petition, not only that respondent had sufficient water to supply their demand, but that it had such quantity over and above the amount of water actually being supplied to those entitled to demand and re-

2 Cal. App.—27.

ceive water. The contractual duties of respondent extend to the full amount of water which it agreed to furnish, but its legal duty, enforceable by mandate, extends only to the sur- plus water which remains subject to petitioner's use and de- mand after the needs of others actually receiving water, and entitled thereto by reason of prior demand and use, have been satisfied. In my opinion, therefore, the right asserted under the contract is a false quantity in determining petitioners' right to the particular remedy and relief here sought. The petition is framed on the theory that, because respondent contracted to furnish a certain definite quantity of water, mandate will lie to compel it to do so. This being the case, the majority opinion might be construed as holding that this would follow if the omitted statement of fact had been in- serted. Waiving consideration of all other rights arising un- der this or similar contracts, I am of the opinion that it is only rights to water arising under the constitution and statutes which can be enforced by mandate, and hence deem it proper, if not necessary, that the ground of my concurrence should be separately stated.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1906.